UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARYROSE LIMSON, et al.,

          Plaintiffs,

    v.

BRIDGE PROPERTY MANAGEMENT
COMPANY,

          Defendant.

Case No. 19-cv-02795-JCS

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS AND DENYING
DEFENDANT'S MOTION TO STRIKE**

Re: Dkt. Nos. 10, 11

## I.      INTRODUCTION

Plaintiffs bring a putative class action against Defendant Bridge Property Management
Company ("BPMC"), asserting claims under the federal Fair Credit Reporting Act ("FCRA"), 15
U.S.C. § 1681 *et seq.*, the California Investigative Consumer Reporting Agencies Act ("ICRAA"),
Cal. Civ. Code § 1786, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.
Code § 17200 *et seq.*  Plaintiffs' claims are based on BPMC's alleged failure to follow certain
disclosure requirements with respect obtaining consumer background reports about Plaintiffs, who
applied to be tenants and residents of a low-income apartment complex managed by BPMC.
BPMC brings a Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction ("Motion
to Dismiss") and a Motion to Strike Complaint ("Motion to Strike"), which came on for hearing
on September 6, 2019.  For the reasons stated below, the Motion to Dismiss is GRANTED in part
and DENIED in part.  The Motion to Strike is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28
U.S.C. § 636(c).

## II.     BACKGROUND

### A.     The Complaint

The named plaintiffs are four adults who applied to be tenants or are residents at the Ivy II at College Park ("the ivy II"), a low-income apartment complex in Chino, California, and their minor children. Complaint ¶¶ 2, 7.  The Ivy II is "own[ed] and manage[d]" by BPMC, which is a corporation formed under the laws of the State of California that has its principal place of business in San Francisco, California. *Id*. ¶¶ 8, 15.  Plaintiffs allege that "Defendants requested, procured, processed, used and/or assisted in acquiring investigative consumer reports on the Plaintiffs as part of their applications for residency at the Ivy II and as part of the annual re-certification of the Plaintiffs to be residents at the Ivy II, without providing proper disclosures in compliance with the FCRA and ICRAA, and without obtaining proper authorization in compliance with the ICRAA." *Id*. ¶ 4;  *see also id.* ¶ 16 (alleging that "Plaintiffs are informed and believe and thereon allege that, throughout the time period at issue, Defendants used investigative consumer reports as part of their applications for rentals and for continuing the residency of tenants").

Specifically, Plaintiffs allege that they applied for housing at the Ivy II in June 2017 and paid a $25 application fee. *Id*. ¶ 17.  They allege that as part of that process, they "completed a mandatory multi-page application form" that "included a release and purported authorization permitting the Defendants, at their request, to perform credit and background [checks] to obtain . . . certain private[ ] and personal information from third parties about Plaintiffs." *Id*. ¶18.  Plaintiffs allege the release and authorization did not comply with the requirements of the FCRA because it "failed to provide applicants . . . with written notice of their rights to request additional disclosures and the written summary of their rights under the FCRA." *Id*. ¶ 19.  Plaintiffs further allege that BPMC violated the ICRAA as follows:

> In violation of the ICRAA, the release/application did not provide a means for Plaintiffs to indicate (i.e., by means of a box to check), allowing them to obtain any report prepared in relation to applications. Defendants obtained investigative consumer reports on Plaintiffs for the applications at the rental property, and never told Plaintiffs that investigative consumer reports would be prepared regarding their character, general reputation, personal characteristics, and mode of living. In addition, Defendants never told Plaintiffs the name or address of the investigative reporting agency that prepared

> the reports, and neither did Defendants give or allow Plaintiffs to have a summary of the provisions of Civil Code § 1786.22 as required under the ICRAA, which defeated the purpose of the statute and discouraged and/or effectively eliminated the ability of tenants to know and thus obtain access to and copies of the investigative reports on them and their family members.

*Id.* ¶ 20.

In their Class Allegations, Plaintiffs seek to assert class claims on behalf of the following class:

> All persons in the United States who applied to become tenants and/or completed tenant recertifications, and/or were minors with permission to reside at any of Defendants' properties within the applicable Class Period.

*Id.* ¶ 21. They allege the class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* ¶ 23. Though they are uncertain about the exact number of Class Members, *id.* ¶ 24, they allege that "[t]here are more than 1000 (one thousand) putative Class Members in many different apartment home complexes owned and/or managed by Defendants throughout the State of California." *Id.* ¶ 11.

Plaintiffs assert claims under the ICRAA, the FCRA and the UCL. In their ICRAA claim, Plaintiffs allege that BPMC "willfully violated California Civil Code § 1786.16(b)(1) because [it] failed to provide, by means of a box to check on a written form, the opportunity to request and receive a copy of the consumer background report obtained for Plaintiff[s]." *Id.* ¶ 36. Plaintiffs further allege that BPMC violated the ICRAA, Cal. Civil Code § 1786.16(a)(3), "by not informing Plaintiffs that investigative consumer reports would be prepared regarding their character, general reputation, personal characteristics, and mode of living" and failing to provide Plaintiffs "with the names and addresses of the investigative consumer reporting agency or agencies that made the reports," or "a summary of the provisions of Civil Code § 1786.22." *Id.* ¶ 38. Plaintiffs allege that "[a]s a direct and proximate result of the acts and omissions of Defendants as alleged [herein] Plaintiffs have suffered and incurred, and continues to suffer and incur, damages, including but not limited to attorneys' fees and costs." *Id.* ¶ 40. Plaintiffs further allege that "[a]s a direct and proximate result of Defendants' illegal procurement of background reports through their inadequate disclosures, as alleged herein, Plaintiffs have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the

ICRAA." *Id*. ¶ 44.  Plaintiffs seek "damages in an amount according to proof at trial" or "statutory damages of $10,000 per person for each violation" as well as an injunction enjoining BPMC from violating the ICRAA.  *Id*. ¶ 39.

In their FCRA claim, Plaintiffs allege that BPMC willfully violated 15 U.S.C. § 1681d(a)(1) by failing "to inform Plaintiffs and the putative class of their rights to request additional disclosures, and fail[ing] to provide them the written summary of their rights under the FCRA." *Id*. ¶ 47.  Plaintiffs allege that BPMC's "failure to inform Plaintiffs and the putative Class of their rights under 15 U.S.C. § 1682d(b) deprived Plaintiffs and the putative Class of the benefit of information that they had been entitled by law to receive, and runs afoul of the FCRA's rationale." *Id*. ¶ 50.  They further allege that BPMC "required Plaintiffs to execute illegal contracts." *Id*. ¶ 52.  For these violations, the Complaint asserts that Plaintiffs are entitled to statutory damages of $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages under 15 U.S.C. § 1681n(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3). *Id*. ¶ 53.  In addition, Plaintiffs seek a declaration from the Court that BPMC's "residential contracts and applications are illegal contracts and are in violation of" the FCRA. *Id*. ¶ 55.

Finally, Plaintiffs assert a claim under the UCL, which prohibits "any unlawful, unfair or fraudulent business act or practice." *Id*. ¶ 57.  Plaintiffs allege that BPMC engaged in "unlawful conduct" by violating the FCRA and the ICRAA. *Id*. ¶ 58.  They further allege that BPMC engaged in "fraudulent conduct" by "willfully concealing investigative consumer reports from the tenants it was investigating in violation of the FCRA and the ICRAA." *Id*. ¶ 60.  Plaintiffs allege that "[a]s a direct result of Defendants' unlawful, unfair, and fraudulent business acts and/or practices, Plaintiffs and Class members suffered injury in fact and lost money or property. Among other things, Plaintiffs were deprived of the benefit of information that they had been entitled by law to receive." *Id*. ¶ 64.  On their UCL claim, Plaintiffs seek "restitution and injunctive relief against Defendants in the form of an order prohibiting Defendants from engaging in the alleged misconduct described herein [and] monetary damages for what Plaintiffs and Class members paid to apply for tenancy and/or residency at

Defendants' properties." *Id*. ¶ 65.

In addition to the remedies described above, Plaintiffs "request declaratory relief to quiet title to Plaintiffs' leasehold interests in Defendants' properties so that Plaintiffs may hold and continue to occupy their residential apartment homes without fear of unlawful eviction." *Id*. ¶ 1.

Plaintiffs assert that the Court has jurisdiction over the FCRA claim under 28 U.S.C. § 1331 (federal question). *Id*. ¶ 10. They assert that the Court has jurisdiction over the California State law claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), and on the basis of supplemental jurisdiction under 28 U.S.C. § 1367. *Id*. ¶¶ 11-12.

## B.    The Motions

### 1.    The Motion to Dismiss

In the Motion to Dismiss, BPMC argues that Plaintiffs' FCRA and ICRAA claims fail for lack of standing under Article III of the U.S. Constitution, citing the Supreme Court's decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). Motion to Dismiss at 15-18. According to BPMC, Plaintiffs allege only two forms of harm: invasion of privacy and informational. *Id*. at 17. As to the former, BPMC argues that because Plaintiffs authorized it to access their information they have no claim for invasion of privacy. *Id*. (citing *Larroque v. First Advantage LNS Screening Solutions, Inc.*, No. 15-4684 JSC, 2016 WL 4577257, at *4 (N.D. Cal. Sept. 2, 2016)). Likewise, BPMC asserts, to state a claim based on informational injury Plaintiffs must allege that they were not aware that they were authorizing BPMC to access their information, which they do not allege. *Id*. (citing *Marc Marchioli v. Pre-employ.com, Inc., Eisenhower Med. Ctr.*, et al., No. EDCV 16-cv-2305 JGB (DTBx), 2017 WL 7049527 (C.D. Cal. June 30, 2017)). Because Plaintiffs allege only a "bare procedural violation," BPMC argues, they do not have standing to assert their claims under the FCRA and ICRAA. *Id*. at 18.

BPMC also argues that Plaintiffs fail to state a claim under Rule 12(b)(6) as to their FCRA claim because they have alleged no facts showing that the consumer reports obtained by BPMC fall under the FCRA's definition of an "investigative consumer report." *Id*. at 18-21. In contrast to the definition of the same term under the ICRAA, an "investigative consumer report" under

federal law must be "obtained through personal interviews." *Id.* (quoting 15 U.S.C. § 1681a(e)). According to BPMC, Plaintiffs have not alleged any facts showing that this requirement is satisfied. *Id.* Rather, BPMC contends, Plaintiffs have glossed over this difference, suggesting that under both state and federal law, a report constitutes an "investigative consumer report" so long as it meets the requirement (applicable under both the FCRA and the ICRAA) that it contain "information on a consumer's character, general reputation, personal characteristics, or mode of living." *Id.* (citing Complaint ¶ 5). Because Plaintiffs have included only conclusory allegations that BPMC obtained "investigative consumer reports" about them, their FCRA should be dismissed under Rule 12(b)(6), BPMC argues. *Id.* at 21.

Next, BPMC argues that in the absence of a viable federal claim the remaining state law claims should be dismissed for lack of federal jurisdiction. *Id.* at 21-23. First, to the extent that Plaintiffs rely on jurisdiction under CAFA, they have not demonstrated that CAFA's $5 million amount-in-controversy requirement has been met. *Id.* at 22. BPMC notes that to the extent that Plaintiffs rely on the statutory damages that they seek under the ICRAA to establish that the amount-in-controversy requirement is met, Plaintiffs fail to meet their burden because the statute does not provide for statutory damages in the case of class actions  and Plaintiffs have not alleged any actual damages resulted from BPMC's alleged violations. *Id.* (citing Cal. Civ. Code § 1786.50(a)). BPMC further asserts that the Court should not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over Plaintiffs' state law claims if it dismisses Plaintiffs' federal claim. *Id.* at 23.

Finally, BPMC challenges Plaintiffs' UCL claim on the grounds that: 1) Plaintiffs have not alleged economic injury, which is required to establish standing under the UCL; and 2) the claim fails because it is "tethered" to the FCRA and ICRAA claims and therefore fails for the same reasons those claims fail.

BPMC asks the Court to award attorneys' fees in connection with the instant motion under the FCRA, arguing that the law is clear that Plaintiffs must allege a concrete injury and Plaintiffs' filing of the Complaint therefore was in bad faith or for the purposes of harassment. *Id.* at 24.

### 2. The Motion to Strike

In the Motion to Strike, BPMC argues that Plaintiffs' allegations in Paragraph 1 of the Complaint, seeking "declaratory relief to quiet title in Plaintiffs' leasehold interest" should be stricken because no quiet title claim has been asserted and there are no allegations suggesting such relief is appropriate. Motion to Strike at 3-4. Consequently, BPMC contends, these allegations are immaterial and redundant. *Id*. BPMC also asks the Court to strike allegation in the Complaint referring to an "illegal contract" and asking the Court for a "declaration . . . that Defendants' residential contracts and applications are illegal contracts." *Id*. at 4-5. According to BPMC, these allegations should be stricken because violation of the FCRA and/or the ICRAA does not invalidate lease agreements or other contracts. *Id*.

## III. ANALYSIS

### A. Legal Standards

#### 1. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists" over a given claim. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (internal quotation marks and citations omitted). Rule 12(b)(1) allows defendants to move to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "If the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to demonstrate the existence of jurisdiction, the court's inquiry is much the same as when ruling on a motion to dismiss brought under Rule 12(b)(6)." *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1124 (S.D. Cal. 2005) (citing Moore's

Federal Practice § 12.30). This means the court accepts the factual allegations in the complaint as true. *Miranda v. Reno*, 238 F.3d 1156, 1157 (9th Cir. 2001). Where a defendant brings a factual challenge, on the other hand, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242 (citation omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

### 2. Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

8

(quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 3. Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (quotation marks, citation, and first alteration omitted), rev'd on other grounds by *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994). "Rule 12(f) motions are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001) (citation omitted). Consequently, such motions generally are not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. *Id.* (citing *LeDuc v. Kentucky Cent. Life Ins. Co*., 814 F. Supp. 820, 830 (N.D. Cal.1992)). "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 974–75 (9th Cir. 2010). Rather, such claims should be addressed under Rule 12(b)(6) or on summary judgment. *Id*.

### 4. Overview of Relevant FCRA Provisions

The FCRA provides that "[a] person may not procure or cause to be prepared an investigative consumer report on any consumer unless . . . it is clearly and accurately disclosed to the consumer that an investigative consumer report . . . may be made, and such disclosure . . .

9

(A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title." 15 U.S.C.A. § 1681d(a). Section 1681g(c), in turn, sets forth the information that must be provided to consumers in the summary of rights, including the right to obtain a copy of any consumer credit report and dispute the content of such a report, as well as the method by which the report can be obtained.

An "investigative consumer report" is a type of consumer report and is defined as "a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information." 15 U.S.C. § 1681a(e); *see also* 15 U.S.C. § 1681a(d)(1) (defining a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" obtained for certain enumerated purposes).

Where a violation of the FCRA is willful, the individual who did not comply with its requirements is liable to the consumer "for any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(A)(1)(a). The FCRA further provides for award of "such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n(a)(2). Finally, a party that prevails on an FCRA claim is entitled to reasonable attorneys' fees and costs. 15 U.S.C. § 1681n(a)(3).

### 5. Overview of Relevant ICRAA Provisions

The ICRAA, like the FCRA, imposes notification and disclosure requirements on a person or entity that performs a background check on a consumer. Cal. Civ. Code §1786 *et seq.* Among other things, the ICRAA provides that "[i]f an investigative consumer report is sought in connection with the hiring of a dwelling unit . . . the person procuring or causing the request to be

made shall, not later than three days after the date on which the report was first requested, notify the consumer in writing that an investigative consumer report will be made regarding the consumer's character, general reputation, personal characteristics, and mode of living." Cal. Civ. Code §1786.16(a)(3). In addition, the person or entity that requests an investigative consumer report is required to "[p]rovide the consumer a means by which the consumer may indicate on a written form, by means of a box to check, that the consumer wishes to receive a copy of any report that is prepared." Cal. Civ. Code §1786.16(b)(1). The definition of an "investigative consumer report" under the ICRAA is broader than under the FCRA; under the ICRAA, it is defined as is "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained *through any means*." Cal. Civ. Code §1786.2(c) (emphasis added).

"An investigative consumer reporting agency or user of information that fails to comply with any requirement" of the ICRAA is liable to the consumer for "[a]ny actual damages sustained by the consumer as a result of the failure or, except in the case of class actions, ten thousand dollars ($10,000), whichever sum is greater." Cal. Civ. Code §1786.50(a). In addition, "[i]f the Court determines that the violation was grossly negligent or willful, the court may . . . assess, and the consumer may recover, punitive damages." Cal. Civ. Code §1786(b). Finally, a prevailing party is entitled to the costs of the action and reasonable attorneys' fees. Cal. Civ. Code §1786(a)(2).

### 6. Legal Standards Governing Standing Under *Spokeo*

"[T]he irreducible constitutional minimum of [Article III] standing" contains three elements, namely, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court has described the "injury in fact" requirement as the "'[f]irst and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is

11

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

In *Spokeo*, the Court emphasized that concreteness and particularization are separate requirements. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560 n. 1). Even where this requirement is met, however, the injury-in-fact requirement will not be satisfied unless the injury is also concrete. *Id*. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). An injury may be "concrete" even if it is intangible, the *Spokeo* Court explained, and "in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id*. at 1549. With respect to history, the Court said, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-777 (2000)). The judgment of Congress is also "instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id*. Thus, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id*. (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)).

Nonetheless, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549. Thus, while a procedural violation "can be sufficient in some circumstances to constitute injury in fact," for example, where there is a "risk of real harm," a "*bare* procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id*. (emphasis added).

The Court in *Spokeo* addressed the injury-in-fact requirement in the context of an alleged FCRA violation. The plaintiff, Robins, alleged that Spokeo, a "people search engine," had violated Section 1681 of the FCRA by providing inaccurate information about him in a generated

report. *Id*. at 1544. Specifically, it was alleged that "[a]t some point in time, someone (Robins' complaint does not specify who) made a Spokeo search request for information about Robins, and Spokeo trawled its sources and generated a profile. By some means not detailed in Robins' complaint, he became aware of the contents of that profile and discovered that it contained inaccurate information." *Id*. at 1546.

The Ninth Circuit held that Robins had adequately alleged an injury in fact because he had alleged a "particularized" injury, namely, violation of his statutory rights under the FCRA, but the Court found that the Ninth Circuit's analysis was incomplete because it had failed to consider whether that injury satisfied the "concreteness" requirement. *Id*. at 1545, 1548. The Court remanded the case for consideration of whether Robins had met that requirement, taking "no position as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct." *Id*. at 1550. While the Court did not reach the question of whether the plaintiff's allegations were sufficient to demonstrate a concrete injury, it offered examples of FCRA violations that likely would *not* satisfy the concreteness requirement, opining as follows:

> On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id*. at 1550.[2]

### 7. Legal Standards Governing CAFA Jurisdiction

CAFA provides that district courts have original jurisdiction over any class action in

---

[2] In her dissent, Justice Ginsburg, joined by Justice Sotomayor, agreed with the general principals articulated by the majority but found "no utility in returning [the] case to the Ninth Circuit" because she believed Robins' allegations "carr[ied] him across the threshold." *Id*. at 15555. In particular, "[f]ar from the incorrect zip code, Robins complain[ed] of misinformation about his education, family situation, and economic status, inaccurate representations that could affect his fortune in the job market." *Id*. at 1556.

which: (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5). "To 'determine whether the matter in controversy' exceeds that sum, 'the claims of the individual class members shall be aggregated.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(6)). Under CAFA, the burden of establishing jurisdiction is on the proponent of federal jurisdiction. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (footnote omitted)). Where the amount in controversy is unclear from the complaint or disputed by the parties, the court may consider "summary-judgment-type evidence" to determine whether the requirements of CAFA jurisdiction are established by a preponderance of the evidence. *Id.* (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

**B.    Sufficiency of Allegations Regarding Consumer Investigative Report under FCRA**

As discussed above, under the FCRA an "investigative consumer report" is a consumer report that is "obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information." 15 U.S.C. § 1681a(e). Plaintiffs do not dispute that they have alleged no specific facts showing that this requirement is met. Rather, they point to the fact that they have used the term "investigative consumer reports" in the Complaint, which under the definition of that term in the FCRA necessarily means that Plaintiffs are alleging that BPMC obtain information about them "through personal interviews." Opposition at 12 (citing Complaint ¶¶ 4-5). This is the essence of conclusory pleading, simply reciting the legal standard without

alleging any supporting facts, and is not sufficient to meet the standards set forth above, in Section III(A)(2). *See Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-CV-02588-JCS, 2015 WL 5782352, at *7 (N.D. Cal. Oct. 5, 2015). Therefore, the FCRA claim fails to state a claim and must be dismissed. Plaintiffs will be given leave to amend to allege facts showing that the reports allegedly obtained by BPMC fall within the definition of investigative consumer reports.

### C.  Whether Plaintiffs Have Article III Standing

Assuming Plaintiffs are able to amend their FCRA claim to state a viable claim, the Court will have to address whether Plaintiffs have standing to assert their claims under *Spokeo* and Article III. [3] The Court concludes that they do.

*Spokeo* requires that Plaintiffs allege some concrete injury and not merely a bare procedural violation of the FCRA. *Spokeo*, 136 S. Ct. at 1549. As discussed above, a concrete injury may be intangible and yet still confer Article III standing. *Id*. In recent cases applying the principles articulated in *Spokeo* to FCRA claims, courts have focused on two forms of intangible injury, both of which are alleged here: violation of privacy and informational injury.

In *Syed v. M-I, LLC*, the Ninth Circuit addressed the FCRA requirements that apply to consumer reports obtained for employment purposes, governed by 15 U.S.C. § 1681b(b). 853 F.3d 492, 499 (9th Cir.), *cert. denied*, 138 S. Ct. 447 (2017). That section contains a disclosure requirement, which "creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process." *Id*. at 499 (citing 15 U.S.C. § 1681b(b)(2)(A)(i)). It also contains an authorization requirement, which "creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check." *Id*. (citing 15 U.S.C. § 1681b(b)(2)(A)(ii)). The Ninth Circuit explained that § 1681b(b)(2)(A) "furthers

---

[3] Although BPMC seems to suggest in the Motion to Dismiss that the standing cases upon which it relies apply equally to the claims asserted under the FCRA and the ICRAA, *see* Motion to Dismiss at 15, none of the cited cases addresses whether the plaintiff has standing under the ICRAA. Rather, all are limited to the question of whether the plaintiffs have standing to assert claims under the FCRA. Therefore, the Court here rules only on the Article III standing question as it relates to Plaintiffs' FCRA claim.

Congress's overarching purposes of ensuring accurate credit reporting, promoting efficient error correction, and protecting privacy." *Id*. at 496-497 (citation omitted). It continued, "in addition to securing job applicants' privacy rights by enabling them to withhold authorization to obtain their consumer reports, the provision promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report." *Id*. Thus, it concluded that "[b]y providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a 'chain[ ] of causation that will give rise to a case or controversy.'" *Id*. at 499 (citing *Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580 (1992) (Kennedy, J., concurring))).

In *Syed*, the plaintiff alleged that the authorization he had signed when he commenced employment, which authorized his employer to obtain consumer reports about him for employment purposes, violated the FCRA because it also included a liability waiver, in violation of a requirement under the FCRA that a disclosure statement should *only* include the required disclosures. *Id*. at 497-498 (citing 15 U.S.C. § 1681b(b)(2)(A)). He further alleged that he "discovered [the employer's] violation(s) within the last two years when he obtained and reviewed his personnel file from [his employer ] and discovered that [the employer]had procured and/or caused to be procured a 'consumer report' regarding him for employment purposes based on the illegal disclosure and authorization form." *Id*. at 500. The court found that for pleading purposes:

> This allegation is sufficient to infer that Syed was deprived of the right to information and the right to privacy guaranteed by Section 1681b(b)(2)(A)(I)–(ii) because it indicates that Syed was not aware that he was signing a waiver authorizing the credit check when he signed it. Drawing all reasonable inferences in favor of the nonmoving party, we can fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute.

*Id*. at 500-501. For this reason, the court held, the plaintiff had adequately alleged standing under Article III. *Id*. at 501 (citing *Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 628–638 (E.D. Va. 2016)). The court noted in a footnote, however, that "what suffices at the Rule 12(b)(6) stage may not suffice at later stages of the proceedings when the facts are tested." *Id*. at 499 n. 4.

The case on which the Ninth Circuit relied, in *Syed*, *Thomas v. FTS USA, LLC*, addressed the implications of *Spokeo* for FCRA claims in some depth. Like *Syed*, *Thomas* addressed the disclosure and authorization requirements that apply in the employment context, under § 1681b(b)(2). There, the plaintiff alleged that the employer and its parent company violated the FCRA because "[d]efendants did not provide [him] with a written disclosure that they intended to obtain a copy of his consumer report for employment purposes," and the plaintiff did not provide the "[d]efendants with his written authorization for them to obtain his consumer report for employment purposes." 193 F. Supp. 3d at 634. In particular, the plaintiff alleged that when his employer was acquired by another company all employees were required to undergo a background check as a condition of continued employment; in his case, the background check included information about felony convictions that was incorrect, as well as information about his driving record that was correct. *Id*. at 627-628. Based on his driving record, the plaintiff was told that he was not eligible for a position for which he had applied. *Id*. Although the employer apparently took no action based on the incorrect information contained in the report about past felony convictions, the plaintiff's supervisor showed the plaintiff a redacted copy of the report, at which point the plaintiff told the employer the information was wrong and a new report was obtained (this time not including the felony convictions). *Id*.

It was undisputed in *Thomas* that none of the defendants' employees had received the disclosures required under the FCRA or a copy of their reports. *Id*. The defendants said they thought a third-party background check vendor was providing the required disclosures. *Id*. Therefore, the plaintiff asserted his claims on behalf of a putative class of fellow employees who also had been subject to the same violations. *Id*. at 625. Before *Spokeo* was decided, the court certified a class (the "Impermissible Use Class") of individuals who had applied for employment with the defendants and had signed authorizations without having been given the required FCRA disclosures. *Id*. at 626. The Court also certified a subclass of individuals who had not been given the required disclosures *and* had been subjected to an adverse employment action based on information contained in their background reports ("the Adverse Action Sub-Class"). *Id*. On summary judgment, the defendants argued that there was no Article III standing as to the two

17

United States District Court
Northern District of California

classes that the Court had certified, pointing to the Supreme Court's recent decision in *Spokeo*. *Id*. The court disagreed. *Id*. at 627.

In addressing Article III standing as to the Impermissible Use Class, the *Thomas* court first looked to the interests Congress sought to protect in the statutory provisions at issue. As to the disclosure requirement invoked by the plaintiffs, the court found that this provision protected the plaintiffs' right to information, and that deprivation of that right gave rise to a concrete injury. *Id*. at 634-635. In reaching that conclusion, the court relied, in part, on the fact that in *Spokeo*, "the Supreme Court . . . confirmed its previous holdings in *Federal Election Comm'n v. Akins*[, 524 U.S. 11, 20–25 (1998)] and *Public Citizen v. Department of Justice*, [491 U.S. 440, 449(1989),] both of which teach that Congress may create a legally cognizable right to specific information, the deprivation of which constitutes a concrete injury sufficient to satisfy Article III." *Id*. at 634 (citing *Spokeo*, 136 S.Ct. at 1549–50). The court also pointed to the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982), in which the Court "held that the plaintiffs (individuals 'who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices,') had suffered a concrete injury under the Fair Housing Act when they received untruthful housing information, even though they did not seek to use the information for any purpose other than litigation." *Id*. (quoting *Havens*, 455 U.S. at 373). Based on these cases, the *Thomas* court concluded that "it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will constitute a concrete injury" and that "it is well within Congress' power to specify the form in which that information must be presented." *Id*. at 635.

The other right that the claims of the Impermissible Use Class turned upon was the plaintiffs' "statutorily created right to privacy and confidentiality of their personal information." *Id*. at 635. The *Thomas* court recognized that "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue." *Id*. (citation omitted). The court further found that "it is well-settled that Congress may create a statutory right to privacy in certain information that strengthens or replaces the common law, and

18

citizens whose statutory right to informational privacy has been invaded may bring suit under the statute to vindicate that right." *Id*. The court rejected the defendants' argument that because the plaintiffs did not seek actual damages their claims were based on "bare procedural violations" under *Spokeo*. *Id*. The court rejected defendants' argument because: 1) "the rights created by § 1681b(b)(2) are substantive rights"; 2) the Supreme Court in *Spokeo* expressly recognized that violation of a procedural right may be sufficient to establish standing even without any additional "actual" harm; 3) the argument "runs contrary to firmly-rooted principles of Anglo–American law, which has long allowed nominal damages where actual damages are too small or difficult to quantify"; and 4) accepting the defendants' argument "would require the Court to override clear Congressional intent" as expressed in the FCRA provision allowing for an award of actual *or* statutory damages for willful violation of the FCRA's requirements. *Id*. (citing 5 U.S.C. § 1681n(a)). For these reasons, the court in *Thomas* concluded that the Impermissible Use Class had standing under Article III. *Id*.

The *Thomas* court went on to find that there was standing as to the Adverse Action Subclass. *Id*. at 637-638. First, the subclass had alleged an informational injury sufficient to demonstrate a concrete injury because "by alleging that Defendants took adverse employment action without providing the information guaranteed by the statute, Thomas, on behalf of the Adverse Action Sub–Class, has alleged an informational injury. Every sub-class member had a statutory right to receive a copy of his or her consumer report and an FCRA summary of rights prior to Defendants' adverse action. No sub-class member received the required information." *Id*. at 638. The court also found that a second concrete injury had been shown as to the subclass:

> they were deprived of the opportunity to "be confronted with the charges against [them] and tell [their] side of the story." . . . Even if all of the subclass members' consumer reports were entirely correct (an unlikely scenario, given the errors that commonly pepper consumer reports despite the FCRA's protections), the sub-class members were deprived of the opportunity to explain any negative records in their consumer reports and discuss the issues raised in their reports with Defendants before suffering adverse employment action.

*Id*. (citing S. Rep. No. 517, 91st Cong., 1st Sess. 2 ("Senate Report") at 3). According to the *Thomas* court, the legislative history reflects that Congress intended to protect against such injury

19

when it enacted the FCRA:

> Congress also specifically recognized that "[o]ne problem which the hearings [concerning the bill that later became the FCRA]. . . identified is the inability at times of the consumer to know he is being damaged by an adverse credit report." . . . "Unless a person knows he is being rejected for credit or insurance or employment because of a credit report, he has no opportunity to be confronted with the charges against him and tell his side of the story."

*Id.* (citing Senate Report at 3). Therefore, the court found that there was Article III standing as to the Adverse Action Subclass as well. *Id.* at 638.

District courts that have applied *Spokeo* to FCRA claims based on disclosures that are alleged to be unclear or otherwise out of compliance with the FCRA as to the form of the disclosure have generally held that in order to have standing the consumer must "allege some actual harm, such as being confused or misled by the improperly formatted disclosure." *Williams v. Vitas Healthcare Corp. of California*, No. 18-CV-02096-JSW, 2018 WL 7253633, at *4 (N.D. Cal. Aug. 6, 2018) (citing *Bercut v. Michaels Stores Inc.*, No. 17-CV-01830-PJH, 2017 WL 2807515, at *5 (N.D. Cal. June 29, 2017) ("[*Syed*] confirms . . .that Article III requires some allegation of actual harm, e.g., that plaintiff was "confused" by the disclosure or that she would not have signed the authorization had it been presented in a FCRA-compliant format."). Thus, for example, in *Larroque v. First Advantage LNS Screening Sols., Inc.*, the court found that the plaintiff did not have standing to assert a claim based on §1681b(b)(1), which requires that a credit reporting agency must obtain a certification from a potential employer that it has complied with the requirements of § 1681b(b)(2) before supplying a consumer's credit report, because the plaintiff had, in fact, signed an authorization for the employer to obtain a credit report and she did not allege that the employer's disclosures or authorization form violated § 1681b(b)(2). No. 15-CV-04684-JSC, 2016 WL 4577257, at *5 (N.D. Cal. Sept. 2, 2016). Under these circumstances, the court found, there could be no injury based on the plaintiff's privacy or informational rights because she had been informed of and had consented to the release of the background report. *Id.* The court in *Larroque* distinguished *Thomas* on the basis that in that case, the court had found that § 1681b(b)(2) created substantive rights that were implicated by the plaintiffs' claims but in *Larroque* no violation of § 1681b(b)(2) was alleged. *Id.*

20

Similarly, this Court found in *Nokchan v. Lyft, Inc*. that a plaintiff who alleged that his employer did not provided clear and unambiguous disclosures in a stand-alone document, in violation of § 1681b(b)(2), and did not provide a proper summary of rights notice, in violation of §§1681d(a)(1) and 1681g(c), did not have standing under Article III. The Court reasoned that because the plaintiff did not "allege[ ] that as a result of [his employer's] failure to provide the disclosures in a separate document or to notify him of his right to receive a summary of his legal rights he was confused about his rights or that he would not have consented to the background checks had he understood his rights." *Id*. at *9. The Court further noted that the plaintiff did not "allege that he was harmed by the background check in any way." *Id*.

Here, Plaintiffs' claims are not based on consumer reports obtained in connection with employment, unlike the cases discussed above. Rather, they assert their claims based on § 1681d(a)(1). Unlike § 1681b(b)(2)(A), which requires that the disclosures be set forth in a stand-alone document, § 1681d(a)(1) does not contain such a requirement. Nonetheless, it requires that the FCRA disclosures must be made "clearly and accurately," provided to the consumer within three days of the date on which the report is requested, and "include a statement informing the consumer of his right to request the additional disclosures . . . and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) . . . ." As discussed above, § 1681g governs the disclosure of consumers' rights to obtain and dispute information in consumer reports and to obtain credit scores. Plaintiffs here do not allege that they misunderstood the authorization that they signed, or that they agreed to the release of their information only because they were confused by the disclosures. Therefore, under the cases discussed above, the injury in this case cannot be based on a violation of Plaintiffs' right to privacy because Plaintiffs consented to the release of their information.

However, Plaintiffs also allege that BPMC violated the last requirement of § 1681d(a)(1) by simply not telling them they could obtain a copy of their credit reports or *how* they could do it. This is an independent informational injury that implicates the substantive rights that Congress created to allow individuals to verify the contents of credit reports and/or explain their contents, discussed in *Thomas*. Violation of this right to information is not a "bare procedural violation"

because the legislative history reflects that it was one of the primary mechanisms by which Congress sought to address the abuses in the credit reporting industry, namely, by giving consumers the tools necessary to uncover mistakes and abuses.[4]  Therefore, the Court concludes that Plaintiffs have alleged an informational injury sufficient to establish Article III standing under *Spokeo*.[5]

---

[4] In *Rotor v. Signature Consultants, LLC*, which was decided after Plaintiffs filed their opposition brief and was cited in BPMC's Reply brief, the court found that the plaintiff in that case, who alleged that the defendant had failed to provide the summary of rights required under § 1681d(a)(1) and § 1681g (the provisions at issue in this case), had not demonstrated informational injury, stating: "Without any discussion of the 'Congressional judgment' underlying the requirement to provide a summary of consumer rights or analogous '[h]istorical practice' in the common law, *Eichenberger*, 876 F.3d at 983, the Court has no basis to recognize an informational injury that is actionable without additional concrete harm."  No. 18-CV-07526-JST, 2019 WL 3246535, at *5 (N.D. Cal. July 19, 2019).  The undersigned respectfully disagrees with the conclusion of the court in *Rotor*, and finds that the legislative history discussed in *Thomas*, which was cited with approval by the Ninth Circuit in *Syed*, provides a sufficient basis for finding that Congress intended to create a substantive right that can give rise to Article III standing when it enacted the provision in the FCRA at issue here, requiring that consumers be given information not just of their right to obtain a copy of reports obtained about them but also telling them *how* to do so.

[5] In their Opposition, Plaintiffs argue that they suffered concrete harm because they had to pay a $25 application fee.  They contend they are entitled to recover this fee under § 1681n, which provides for, *inter alia*, an award of "actual damages" but does not specifically address whether fees paid for credit reports constitute "actual damages" or are recoverable under the FCRA. Plaintiffs cite *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) in support of their assertion that the $25 application fee constitutes "actual damages" but that case does not support this assertion.  There, the plaintiff alleged that she became aware of incorrect information in her credit report and that it took several requests to get the reporting agency to correct the information, causing her emotional distress.  She asserted a claim for violation of the FCRA and sought actual damages for the violation under § 1681o, including emotional distress damages and the fee that was charged to obtain the credit reports.  The district court found she hadn't alleged any actual damages because she was never denied credit based on the inaccuracies in her credit report and therefore she couldn't have suffered any cognizable emotional distress; it ignored the fees she paid for the credit reports, suggesting it did not consider them to constitute damages.  The Ninth Circuit reversed, saying the emotional distress was enough to show actual damages but also didn't discuss the fees of the credit reporting agency.  What it did *not* say was that the district court's ruling on the emotional distress damages was immaterial because the plaintiff had alleged another type of actual damages, namely, the fee charged for the credit reports. If anything, this case supports the conclusion that these fees are not actual damages.  Plaintiffs also cite *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011) in support of the assertion that to the extent they are entitled to restitution of the application fees under the UCL, they have also demonstrated an economic injury sufficient to establish standing.  As discussed further below, the Court concludes that the application fee is not sufficient to establish standing (either under the UCL or the FCRA) because it was not *caused* by the alleged violation.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("we generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute.").

**D.    Whether there is CAFA Jurisdiction Over State Law Claims if FCRA Claim Fails**

If Plaintiffs are unable to cure the defect in the FCRA claim discussed above, in Section III(B), the Court will be required to decide whether their State law claims should be remanded to State court.  Where a federal court dismisses all pending federal claims, State law claims over which the court exercised supplemental jurisdiction are typically remanded to State court.  *Sanford v. MemberWorks, Inc*., 625 F.3d 550, 561 (9th Cir. 2010) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988), superseded on other grounds by statute as recognized in *Fent v. Okla. Water Res. Bd*., 235 F.3d 553, 557 (10th Cir. 2000)).  Here, however, Plaintiffs assert that there is an independent basis for exercising jurisdiction over their ICRAA claim, namely, CAFA.  If Plaintiffs were to establish that the Court has jurisdiction over that claim under CAFA, it would be in the interests of judicial economy to exercise supplemental jurisdiction over Plaintiffs' UCL Claim.  The Court finds, however, that Plaintiffs have failed to allege that CAFA's amount-in-controversy requirement is met.[6]

Plaintiffs allege in the Complaint that they have suffered actual damages.  *See, e.g.,* Complaint ¶ 39.  Yet the only specific type of damages they identify is the $25 application fee that they paid when they submitted their applications to reside at the Ivy II.  *See id*. ¶ 65.  Assuming that this fee can be considered a form of actual damages (which it likely cannot), it is a long way from meeting the amount-in-controversy requirement.  Plaintiffs allege that there are more than 1,000 class members in California.  Complaint ¶ 11.   No affidavits have been submitted suggesting that the class contains significantly more members and Plaintiffs have not suggested that it does.  Consequently, the $25 application places in controversy no more than $25,000.

To the extent that Plaintiffs rely on the $1,000 per violation they seek in statutory damages under the FCRA, *see* Opposition at 14, that reliance is misplaced as the Court will only reach the

---

[6] BPMC does not dispute that the minimal diversity requirement is met and that there are more than 100 class members, as is required to establish CAFA jurisdiction.

1    question of CAFA jurisdiction if it concludes that the FCRA claim must be dismissed.   Further,

2    Plaintiffs concede that the statutory damages they seek under the ICRAA are not available in class

3    actions.

4         Because Plaintiffs have not demonstrated that CAFA's amount-in-controversy requirement

5    is met, there is no jurisdiction over Plaintiffs' ICRAA claim under CAFA.

6         **E.    Whether the UCL Claim Fails**

7         BPMC asserts that Plaintiffs have not established standing to assert their UCL claim.

8    Standing under the UCL "is limited to any 'person who has suffered injury in fact and has lost

9    money or property' as a result of unfair competition." *Kwikset Corp. v. Superior Court*, 51 Cal.

10   4th 310, 320–21 (2011) (citing Cal. Bus. & Prof. Code § 17204).   In *Kwikset*, the California

11   Supreme Court explained that because a "party who has lost money or property generally *has*

12   suffered injury in fact," there is a "simple test" for determining whether the UCL's standing

13   requirement is met. *Id*. at 322 (emphasis in original).   Under that test, a UCL plaintiff must show

14   (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic*

15   *injury*, and (2) show that that economic injury was the result of, i.e. *caused by*, the unfair business

16   practice or false advertising that is the gravamen of the claim." *Id*. The causal connection required

17   under this test "is broken when a complaining party would suffer the same harm whether or not a

18   defendant complied with the law." *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007),

19   as modified on denial of reh'g (July 3, 2007).

20        Plaintiffs point to their allegation that they paid a $25 application fee to establish standing

21   under the UCL, but that allegation is insufficient because no facts are alleged suggesting that this

22   fee was *caused* by BPMC's alleged violations of the FCRA.   Even drawing all reasonable

23   inferences in favor of the non-moving party, Plaintiffs' allegations indicate that this was a fee that

24   was charged for applying to reside at the Ivy II and that it would have been charged regardless of

25   whether BPMC's disclosures were in compliance with the FCRA.   Therefore, the Court concludes

26   that Plaintiffs have failed to establish standing under the UCL.   Plaintiffs may amend the

27

28

complaint to attempt to cure this deficiency.[7]

**F.    Whether BPMC is Entitled to Attorneys' Fees and Costs**

BPMC asks the Court to award attorneys' fees and costs in connection with the Motion under 15 U.S.C. § 16810, which allows courts to award attorneys' fees and costs incurred in responding to papers that were filed "in bad faith or for purposes of harassment" in an FCRA case. "[B]ad faith may be established based on a showing that the plaintiff's action was unfounded from the outset, frivolous, or brought for the purpose of harassment." *Arutyunyan v. Cavalry Portfolio Servs.*, No. CV 12-4122 PSG AJWX, 2013 WL 500452, at *2 (C.D. Cal. Feb. 11, 2013). The Court does not find that Plaintiffs' complaint was filed in bad faith or for the purposes of harassment. Accordingly, BPMC's request is DENIED.

**G.    The Motion to Strike**

BPMC asks the Court to strike certain allegations in the complaint asking the Court for declaratory relief to quiet title to Plaintiff's leasehold interests in BPMC's properties. BPMC asserts that Plaintiffs have not asserted a quiet title claim or adequately alleged the elements of such a claim, while Plaintiffs assert in their opposition that Defendants have taken actions against some of the Plaintiffs (in the form of eviction proceedings for one and a rent increase for another) that may be in retaliation for Plaintiffs' participation in this lawsuit. BPMC further asks the Court to strike Plaintiffs' references in the complaint to "illegal contracts," arguing that violations of the FCRA and the ICRAA do not invalidate residential contracts or any other contracts that were entered into after a consumer report was obtained. To the extent these arguments turn on the substantive merits of a possible quiet title claim and the remedies requested by Plaintiffs in their complaint, the Court declines to strike these allegations.

**IV.    CONCLUSION**

For the reasons stated above, the Motion to Dismiss is GRANTED in part and DENIED in

---

[7] BPMC also argues that the UCL claim fails because it "tethered" to the ICRAA and FCRA claims and therefore fails for the same reasons those claims fail. The Court has not, however, addressed whether the ICRAA claim is sufficiently pled and therefore declines to rule on whether Plaintiffs could establish unlawful conduct based on that statute for the purposes of their UCL claim. The Court also notes that the Complaint alleges that BPMC violated the "fraudulent" prong of the UCL, which BPMC did not address in the Motion to Dismiss.

United States District Court
Northern District of California

part.  The Court dismisses Plaintiffs' FCRA claim on the basis that it fails to state a claim under Rule 12(b)(6).  The Court dismisses Plaintiffs' UCL claims on the basis that Plaintiffs have not alleged an economic injury that establishes standing as to that claim.  Plaintiffs may file an amended complaint to address these deficiencies no later than **November 15, 2019**.  In addition, targeted discovery will be permitted to address the question of whether Defendant obtained "investigative reports" about Plaintiffs within the meaning of the FCRA, as set forth in the Court's minute order.  *See* Docket No. 28.  The Motion to Strike is DENIED.

**IT IS SO ORDERED.**

Dated:  September 24, 2019

_____
JOSEPH C. SPERO
Chief Magistrate Judge